And who are the attorneys that are going to argue the case? Well, first we'll call the case. 13-2936, People v. King and Gallegos. If both attorneys would step up and identify yourselves for the record, please. Good morning. My name is Rachel Kinstrand. I'm an assistant appellate defender from the Office of the State Appellate Defender, and I represent Appellant Benny Gallegos. What was your last name? Kinstrand. Oh, Kinstrand. So the D is silent. Kind of. All right. Good morning. Good morning. I'm Assistant State's Attorney Ashley Kuzon on behalf of the People. Okay. Ashley Kuzon. All right. Are both of you here appearing for the first time or no? No. No. Good. All right. Well, welcome anyway. Each side will have approximately 15 minutes to present oral arguments. From that, Ms. Kinstrand, you may save out some time for rebuttal. All right. May it please the Court and Counsel, I represent Appellant Benny Gallegos. I intend to focus on the first argument of the brief, but I'm happy to address the other arguments if the Court has questions. I'd like to reserve three minutes for rebuttal. All right. At issue is whether the trial court improperly denied Benny's motion to suppress his confession where it was obtained in violation of his state constitutional right against self-incrimination and his right to counsel as well as his right to due process. The facts of Benny's case demonstrate that his confession should have been suppressed. There are really two arguments. Is there a factual dispute here about what occurred? I think the issue of whether the attorneys, the FTLA attorneys, should have been allowed to see him when they were physically present at the police station is undisputed. I think whether that constitutes a violation of his state constitutional. No, that was my question. My question is, is there a factual dispute? Does the defendant dispute that the attorney showed up and he was informed that attorneys are there? Is there a dispute on that? Because there was not a dispute in the trial court. I don't think there's a dispute that the attorneys were there. And that defendant was informed that they were there. I think there's a dispute over what exactly was said. Where are you citing to, to see that dispute? Because I have not seen it. Well, in the hearing on the motion to suppress, Benny testified. Benny denied hearing anything about the FTLA attorneys that were there. The most he said was that. Was that contained in his statement? It was in his statement, but again, he testified at the suppression hearing in support of his motion. And what he said was that he denied being told that the attorneys had been present, that he knew the attorneys. He said Detective Crane at one point said, do you want to speak to a lawyer, but you're not in any trouble. So that's what he testified to at the suppression hearing. Now, there was also a dispute as to what Detective Crane actually told Benny when he supposedly came in. So when there's a dispute, isn't it up to the trial court to resolve those factual disputes? Sure. It's up to the trial court to decide it. But my position is that the minute the FTLA attorneys arrived, they should have been allowed to see them. And that's a violation. Based on what? What are you basing that? I'm basing that on McCauley and Woods. I'm basing it on the Illinois Supreme Court case. Is it your position that those cases say that as soon as an attorney shows up at a police station, there is a constitutional obligation, regardless of what the defendant wants, for those attorneys to come and see the defendant? Yes. I don't know where you're getting that reading. Well, I mean, I think that's the only fair reading of McCauley and Woods. So the defendant has no say whatsoever on whether he wants to consult with those attorneys. If they show up, he's consulting with them. The defendant has no right to say, no, I want to finish this statement first. The question, that goes back to exactly what he was told. But when the attorneys are physically present, as distinguished from cases where an attorney calls the police station and says, you know, I represent an ex-custodial suspect, when an attorney is physically present, they have a constitutional right under the state of Illinois' constitution to see that client. Regardless of what the client themselves wants. Well, not regardless of what the client wants, but my point is that it's not incumbent upon what information the police provide to the defendant about those attorneys being present. His right to counsel shouldn't hinge on what the police tell him about those attorneys. In this case, what was written in the statement and what ASA Grubner testified to was that that he was told a lawyer was present and wished to speak to him. Now, what McCauley says is that an abstract offer, that there's a lawyer here to talk to you, is not sufficient. Absent some other indication that that is his attorney. And the point that the state made in its brief is just not borne out by the facts of this case. He wasn't given the identity of the lawyers. He wasn't told they were his attorneys. ASA Grubner testified consistent with what was in the statement, that he was never given any identifying information. And while McCauley acknowledged that the right to counsel belongs to the accused, it also made a point that I'll quote in here. And that is, while we recognize that an accused alone invokes the right to counsel, we are unwilling to dismiss an available, retained, or appointed attorney's efforts to gain access to a suspect client as constitutionally insignificant to the capacity of the suspect to make a knowing and intelligent choice to relinquish his right to the attorney's presence. And that's the problem. In McCauley, the attorney was never given access to his client at all. Then in a 2003 case, which I cited in the brief, and that was People v. Woods, the client was Mirandized multiple times, and he was told by one of the state police agents that Well, that was very different in Woods, wasn't it? Weren't the attorneys told this is a state police investigation, so you're not going to talk to them until the state police are here? Isn't that a little bit different? I don't think it's different at all. In Woods, the attorney showed up. The guy wasn't even being interrogated at the time, and he was denied access. Well, does that make a difference here? Because according to the testimony, he was actually talking to someone. He was being interrogated, so to speak, wasn't he? Yeah, it's even worse. I mean, it's worse. He's in the middle. So they arrived at 1245. The statements, the FDLA attorneys, they arrived between 1245 and 1 a.m. ASA Grebner, initially at the motion to suppress testified he got there somewhere after midnight. He's in the room beginning the statement. The statement itself is dated for 1245 a.m. He says he's beginning to type the statement when Detective Crane is pulled out of the room. So prior to him signing the statement or even Grebner completing the statement, the FDLA attorneys show up. But could I just interject? In that kind of situation, the assistant state's attorney had already talked to the defendant because he doesn't, like, start taking a statement and typing it up based on not talking to him. I believe he talked to him, but what exactly was said was never introduced at trial. What you're seeking here is a rule of law that if an attorney shows up at a police station and represents a defendant, that that attorney should be able to personally be brought immediately in to talk to a defendant. Is that your point? Can a police officer announce the presence of the attorney, which is what we have in this case? Are you saying that the lawyer should immediately be brought in with a face-to-face with the defendant? And so what is the support for that? I believe that is the rule. I believe if you look carefully at McCauley and Woods, and even if you go back to the ONI Supreme Court's decision on People v. Smith, I mean, if it's not sufficient, if it's not a sufficient waiver for, for example, Woods, for the state police agent to go to the holding cell and say, there's been an attorney here, I can make arrangements for a phone call, but after that I can't talk to you. If that's not sufficient, because that's what the trial court held. The trial court in Woods said, I find that the waiver was sufficient because he was supposedly given a business card and told about the attorney. I find that sufficient, and this court overruled it. One thing I was thinking about here was that in this case, during the hearing, this particular trial judge heard and saw the witnesses, and he concluded that, well, first of all, in the statement itself, does it mention that it was mentioned that an attorney was present at the area? The abstract offer that a lawyer was there is in the statement, yes. Okay. So anyway, the trial judge here made some findings of that. Those findings were that this assistant state's attorney, I don't know, he said he wasn't a cowboy, something like that. In the ruling on, in the ruling on, in the guilty finding, yeah. All right. Let's go back then to the motion to suppress the hearing. He made a finding of fact, didn't he, that the defendant was admonished that there were, there was an individual or, I don't think it was that two people were there, but that there was an attorney present in the station, and that according to the assistant state's attorney, the sergeant came, well, no, he didn't see the sergeant, but an officer came in and said, there's an attorney representing himself downstairs as your attorney. Do you want to speak to him? That's not, that's not what he testified to. He said, I mean the assistant state's attorney, what did he say? He said there's a lawyer here who wants to speak to, it was never communicated that it was his attorney. All right. What did the trial judge find? The trial judge found that that was sufficient. And my position is that as a matter of law, even taking that as true, let's even say that's what was in the statement and what ASA Grabner testified to twice, both at the suppression hearing and at the trial, even if that's true, as a matter of law, it's not sufficient. My position is otherwise, Miranda would be sufficient. And we know there's a kind of a big debate about that as well, isn't there? I mean, there's quite a conflict once there's an actual hearing, wherein the defendant says multiple times that no one ever advised him of his Miranda warnings. Doesn't he say that? He says that, but it's. . . Does it get any meaning? Doesn't it make a difference? Because the trial judge has to figure this out. One person said that he was advised multiple times. He's saying that he wasn't advised at all. Then the judge says something about, you know, he's basically giving an exculpatory statement and he wants to finish. And so the judge has to make some kind of determination credibility-wise, doesn't he? Isn't that what the trial courts are for? I don't. . . I mean, I guess I would go back to my first point. I don't think this even depends on credibility. Oh, I think McCauley would, even if you go back to Smith. . . It's pretty clear Illinois law, Illinois interpretation of state constitutional rights is different from the federal constitution. The Illinois Supreme Court has said more in the Burr line, which is the case that involved a phone call that's a regressive view of a defendant's right of self-incrimination. And it's not just the right to counsel that's at issue. So it's not . . . we know that it's not enough for the attorney to show up and then the attorney . . . the defendant to be Mirandized. That's still insufficient. No, I'm not suggesting that. Here's what I want to point to you, and we can discuss this. So in McCauley, the language I think that you are rightly looking at says that our constitutional guarantees do not police . . . do not permit police to delude custodial suspects exposed to interrogation into falsely believing they are without immediately available legal counsel and to also prevent that counsel from accessing and assisting their clients. Then it says it is apparent that when police are allowed to withhold information from suspects, that their attorneys are present and immediately available to offer assistance, enormous pressure builds upon police to secure statements from those suspects before they either exercise their right or somehow learn. Then it says by preventing those attorneys from accessing and assisting their clients, police improperly interfere with the suspect's rights to their attorney's presence as well as the attorney-client relationship. All right. So my question to you is, in the first instance, who is going to make this decision? The appellate court on review or a trial judge after hearing the witnesses testify? But what . . . I mean, there's no dispute that the attorneys were there. I mean, there's just . . . it doesn't matter. Take aside . . . take aside what was said to Benny. Why are we putting it on the police to communicate between the attorney who is present at the police station and their client? All right. Well, the question, I think, becomes there are some kind of standards. I think the question becomes, number one, did the police here delude him? All right. Did they falsely kind of prevent him from this legal counsel? Did they prevent him from accessing counsel? And so I think that's the kind of thing that we . . . I don't think that every case is just something you just say, well, this is the formula and it was violated. I mean, I think there's factual questions that are tied up to every single case. That's all. I'm just saying, are there or are there not? I just . . . you know, I've looked over and over these cases. Obviously, it's not been so long since I wrote the reply. I don't know how you can read the trajectory of all of these cases and say, number one, that when an attorney is physically present at the police station, they're not allowed to talk to their client. Or, in this case, they're not allowed to confer with their client about whether or not they don't want the assistance of counsel. And, number two, even if you considered what was said, even if you took as true what was in the statement and what ASA Grebner testified to, it's still an abstract offer. It's not . . . you know, the sergeant had the identification. He had the FDLA business cards. He never gave those to Benny. Nobody ever said, hey, these are first defense legal aid attorneys. They're here to represent you. Do you want to talk to them? That wasn't what it said. At the point ASA Grebner was taking that statement and Detective Crane came back in the room, there was enormous pressure to get that statement made. And from Benny's perspective, notwithstanding what he testified to . . . At that time, who? The police. Because it's an accountability case. I mean, you know, here, most custodial suspects . . . So if there was this tremendous pressure that's causing them to violate somebody's constitutional rights, why would they tell him there's a lawyer there at all? Well, they would tell him the bare minimum in order to attempt to comply with what their view of Illinois law is. I think that's . . . So . . . I think they gave him the abstract offer with, you know, a view to still trying to get him to talk so that they could get his incriminating statement in writing. What if the statement was contrary to your suggestion? What if the assistant state's attorney had already been there for some time, which it looks like he was, and that he talked to this individual and then the individual agreed to give his statement about what occurred and that they were actually in the midst of this statement, the state's attorney's typing it up, and then the lawyers show up? Are you saying that the defendant can't decide whether he wants to finish the statement or not before he talks to anyone? I'm just asking you. I think that when they're physically available, as opposed to a situation where they call on the phone, the proper procedure under all of these cases is to allow those attorneys to talk to the client. I don't care if they're in the middle of the statement. All right. That kind of takes the right away from the defendant, but granted all that. Now, tell me this. What is our standard of review? You tell us what the reviewing court's standard of review is on a motion to suppress, deny. Well, on this particular legal issue, whether it is bifurcated in this case. You're asking for this bright-line rule. Anytime a lawyer shows up at a police station, he's going to consult with the defendant before the defendant decides whether he wants to consult with them or not. That's a pretty bright-line rule that you're asking for, isn't it? Well, I don't think that if a lawyer shows up at a police station, he's talking to the defendant no matter what the defendant says. Yes, I think when the attorney shows up, I think that's consistent. We need a bright-line rule from the Illinois Supreme Court. Yeah, I think the portions that Justice McBride quoted from McCulley, I mean, why put in by preventing attorneys? Well, how do we review that? How do we review that? That was my question. I knew we have an answer. Are you saying it's de novo? I think it's de novo. Everything is de novo. I think it's de novo, and then I think to the extent so it's de novo on that issue. I think my position is supported by the case law. But to the extent the information is relevant, okay, so to the extent what he put in the statement is relevant to consideration of whether the waiver was valid, you can review that, the factual determinations, under Mattis' best read of the evidence. I'm not disputing that that's typically how you would view the facts. But even if you view the facts in this case, I think Judge Lang was incorrect. I think this is the abstract offer that the court rejected in McCulley and in Woods. It's not sufficient. And if a business card, I mean, in Woods, they told him there was an attorney there, we can make arrangements for you to talk to them. That wasn't sufficient. In Smith, which is in- In Woods, didn't they flat out say, you can't come in and talk to him because this is a state police investigation and we're not letting you go near him until the state police arrive. Wasn't that the comments? I think, you know, I can't remember exactly all the details of that. I think there was also a note involved in Woods' case. There was a note and a business card, and they just gave him the business card. Yeah. They gave him the note saying shut up and say nothing. Right. And I think that I don't think, you know, the note is- I don't think that the requirement should be the attorney has to write a note when they show up to- I mean, you're basically giving the police what would be a privileged communication to the client. I just don't see the note as particularly relevant. But my point is, if a business card wasn't enough in Smith, and if a business card wasn't enough in Woods, then how can what the police communicated to Benny, a lawyer who's here and wants to talk to you, how can that be a sufficient waiver? And I recognize- If you want us to get to where you want us to go, is there a case that you can tell us where the court on appellate review just ran with this de novo review that this is not a typical motion to suppress hearing, the trial court has no business deciding facts, the appellate court should take de novo review and decide this question as a matter of law. Did they do that in McCauley? Did they do that in Woods? I don't know that in McCauley they had- they really set forth a standard of review because they were finding that this was a violation of the state constitution. All right. We'll have to look at it carefully. I just thought you might have a case that you think supports the idea that this is absolute de novo review and nothing less. That's all. Well, I think I can only restate what my position is there. I think we understand your position, that on a matter of de novo review, when an attorney appears in the police station, they should be allowed to have this initial access, or at least maybe a fuller discussion with the person being interrogated. Yes. Yeah. And I mean, we've addressed most of the merits of the issue, and I would just point out, you know, that I had also argued that I didn't think this error was harmless beyond a reasonable doubt under the facts of this case. I mean, I had mentioned earlier that this was an accountability case. There's no dispute that Benny wasn't the shooter, and the shooter was never charged. And I think, you know, even going as far back as Escobedo v. Illinois, and that was an accountability case, and it pointed out how, you know, in the context of giving a statement, a layman might think that because he didn't fire the shots, he's not culpable. And I think that was part of the harm in this case, that, you know, assuming, you know, all the facts of the state are true, you know, if Benny thought he could talk his way out of this because he wasn't the actual shooter, he was mistaken, and he was subsequently charged with attempt murder and aggravated battery with a firearm. He was ultimately acquitted of the attempt murder. But, you know, the minute that the police took his inculpatory statement, he lost any leverage he would have had in plea negotiations. And, you know, the shooter was never charged. The accomplice that testified him was never charged. And there was no I.D. witness. The one independent eyewitness could not make an identification of any of the men involved in the fight. There might have been, apparently, one of the people that was in the car. Did the eyewitness, though, actually support the statement of Bergen? I don't want to say that he saw somebody pull him out of the car. He went to call the police, and then the next thing he knew, he got caught. He heard it, but he didn't see the actual shooting. But I think he saw the scrum. I think he saw what was happening at the beginning. But he was seeing it from a window. He was playing video games with his nephew. But nonetheless, I mean, there wasn't an I.D. witness in this case. So it really came down to these two statements. And I think looking at the evidence as a whole, it can't be deemed harmless and not a reasonable doubt. All right. We'll allow you some time for rebuttal. Thank you. And now we'll hear from me, Assistant State's Attorney. Excuse us. Good morning. Good morning. Again, I'm Assistant State's Attorney Ashley Kuz on behalf of the people. Defendant's appeal centers around his March 2011 gang-related crimes, where defendant dragged an innocent man from his car and beat him into submission while defendant's friend shot that man in the head at point-blank range. Now, defendant first attacks the trial court's pretrial ruling on his motion to suppress his statement. Defendant argues that police officers denied him access to the first defense attorneys in violation of McCauley and that, consequently, his statement should have been suppressed. Now, the rule set forth by the Illinois Supreme Court in McCauley is that a defendant must be informed that the attorneys were present and seeking to consult with him. And that's exactly what happened here. When these attorneys introduced themselves to Sergeant Gallagher at the police station, Sergeant Gallagher went directly to the second floor interview room where defendant was speaking to Sergeant Crane and ASA Grosvenor. And Sergeant Gallagher summoned Detective Crane out of that room and informed him that there were two attorneys requesting to see their client. Detective Crane then went back into the interview room and indicated exactly what Sergeant Gallagher said to him. Now, why didn't the detectives, I know you don't know the answer, but why wouldn't the detective allow the attorney to say, I'm being retained by your family and I'm here to represent you and I'll represent you if you want me to. What do they gain by not doing that? What the police officer, Sergeant Gallagher, did was exactly what he was supposed to do under McCauley. And I think what's really going on here and what the defendant wants you to do is to infer the word access to mean unfettered entry into the police station or unfettered entry into that interview room to talk to the defendant. And that's not what that means. What about this idea that police shouldn't be allowed to interfere with the right to the attorney's presence? Isn't that interference when they won't allow at least the lawyer to go to the room and say, hey, your wife just hired us, we're here to represent you. No, absolutely not. Why not? Why would the Illinois Supreme Court in McCauley mandate that a defendant be informed of his attorney's presence if those officers were required to allow the attorney's unfettered entry into the station's interview room to speak with him? That would in essence swallow the rules set forth by McCauley and render McCauley meaningless. Doesn't Woods, though, abandon McCauley? It does not. It does not. And the key difference in Woods is the fact and what the court focused on were really two things. First, whether that attorney was immediately available and whether that fact that the attorney was immediately available was relayed to the defendant because that's going to affect his decision whether or not to speak with that attorney. So in Woods, the defendant wasn't informed until six hours later that an attorney had been there. And there was significant evidence in that case of deceit and sort of foul play by these officers. Like Justice McBride, you referred to the fact that they said, oh, you can't speak to the defendant or we're not even going to tell the defendant that you're here because this is a state police investigation and the state police investigators aren't here right now. There was also evidence that even when six hours later they told the defendant that the attorney had been there, that the defendant had requested earlier that day to use the phone and been denied. So there was a lot of other things going on. So is it the immediate access to attorney that makes the difference here? Absolutely. Then that is what McCauley sets forth in the rule, that the defendant must be informed that the attorney was present or immediately available and seeking to consult with him. And like I said, that is exactly what we had here. And if you think about it- Is there a possibility here that there's confusion when the defendant is being interrogated by one attorney and then the police come in and say, oh, there's an attorney here that wants to talk to you. Is it possible that this individual thinks that, oh, this is just another lawyer that's trying to get at me. I want to finish this thing. I don't want to talk to another lawyer that's coming in to try to get something out of me. Isn't that possible when they just knock on the door and say, there's somebody here saying they're an attorney, do you want to talk to them? In theory it might be possible, but based on the facts set forth in the record, that wasn't the case here. More than just simply, there's an attorney here that, did they say that wants to represent you? The defendant was informed that his attorneys were there. Sergeant Gallagher, when he summoned Detective Crane out of the interview room, he testified that he informed Detective Crane that, quote, there were two attorneys here requesting to see their client. And then Detective Crane testified, when asked what he said exactly to the defendant, that he indicated exactly what Sergeant Gallagher said to me. There were two people here, and they claim to be your attorneys, and they would like to speak to you. And then again, Sergeant Gallagher further testified that when Detective Crane exited that room, after relaying that information to the defendant, Detective Crane said to Sergeant Gallagher that the defendant, quote, did not wish to speak to the people at the front desk, his attorneys. Now, defense counsels made a big deal about the handwritten statement and the fact that the handwritten statement says the lawyer and not his lawyers. But that's cooperative evidence of the testimony of Sergeant Gallagher and Detective Crane. It's not contradictory. It's just less specific. And the assistant state's attorney, during his testimony, when pressed for exactly what Detective Crane said to the defendant, especially stated that those words were, in essence, I can't testify that those were the exact words. Does a person who's being interrogated that's confronted by the police, not by a lawyer, but who's confronted in a room, an interrogation room, and told that, well, there's somebody here that says they're your lawyer and they want to talk to you, is there really any kind of true access there? Yes. Absolutely. Wouldn't it be different, though, if those lawyers got to see him and said, you know, we're here to represent you. You don't have to say anything. And this is something, actually, I believe that, Justice Burke, you pointed out. This is confusing the idea with defendant's right to invoke counsel with counsel's right to access the defendant. And those two ideas are not interchangeable. McCauley's rule here makes sense because we know that only the defendant can invoke his right to counsel. McCauley's rooted in the Illinois Supreme Court cases of Smith and Griggs, and those cases acknowledge this limitation, finding that there was no right on the part of the attorney to invoke the personal right of a suspect to be advised in presence of counsel. As the Illinois Supreme Court stated, this misunderstands the underlying premise of requiring the police to inform a suspect of the efforts of counsel. So what defendant had here was he had the right to access his attorneys and he was given the opportunity to access those attorneys, but those attorneys did not have a right to access him. And we can't confuse those two ideas. Why did the Supreme Court say in this McCauley case that we're not going to permit the prevention of access of attorneys? I mean, I'm not sure what you're trying to say. McCauley, what that's referring to is really the spirit of McCauley. And what was the Illinois Supreme Court concerned about when it made this ruling? And it was concerned about foul play by the officers. It was concerned about the officers withholding information from the defendant in order to elicit a statement from him or impermissibly delaying that information in order to elicit more evidence from the defendant. And there's absolutely no evidence of foul play in this case. With respect to whether... What about the counsel's argument that, oh, this is an accountability case and he immediately sort of takes himself out or he thinks he's taking himself out. And really when the judge concluded that this was an effort to take himself out, maybe that's really not... I mean, I'm not sure what he's saying, but he really wasn't taking himself out at all. But he doesn't really understand that. Do you think? I'm not sure I really follow counsel's argument either. Well, what's happening here, this detective is probably telling him, well, I believe you're not the shooter. Now, there's a lawyer here. Now, you can talk to the lawyer, you can finish the statement. You know, we removed all that. And you have not the sergeant telling him there's a lawyer. You have this same detective that has established this rapport all during this interrogation giving him this information. And don't you think that would have a stronger influence, motivation for him to continue the statement than if you break that chain of questioning. You have the sergeant saying there's a lawyer here. What do you want to do? I understand that. If he's concerned about the rights of the defendant. Absolutely. And I understand that concern, but I still do not believe that it changes the fact that the interrogation was immediately stopped and that as soon as those lawyers arrived at the police station and requested to speak to the defendant, that information was relayed to the defendant. And like I said, this was defendant's right to invoke counsel. It was his decision. And the trial court acknowledged that in its ruling. The trial court actually found and made a factual finding, I think we were talking about before with defense counsel, whether there was any sort of factual dispute. And like you alluded to, Justice McBride, the trial court was tasked with making a factual determination here. And the factual determination that the trial court made was that it believed the defendant was adequately advised that lawyers were present on his behalf. And that's the key. That's the key to this case. So it also bears noting that aside from what he was informed and the fact that it violated both the spirit and the letter of McCauley, it's important to remember that defendant really knew that those lawyers were there for him. Defendant was Mirandized by the police and again by ASA Grosvenor. And during Miranda, the assistant state's attorney specifically informed him that he was a prosecutor and not the attorney for the defendant. So then while giving his handwritten statement, defendant was informed that there were attorneys at the police station who were requesting to speak to him. And the trial court found that defendant was advised that the attorneys were there to see him. So the trial court's factual finding that defendant was advised that the lawyers were there on his behalf really is the only reasonable interpretation of this evidence. And with respect to, I also want to briefly address an issue raised by defense counsel with regard to this language taken from McCauley about an abstract offer to the right of counsel. And I would like to point out that that portion of McCauley that she quoted is the Illinois Supreme Court's way of distinguishing Miranda warnings from situations like McCauley. So what the court was doing was saying that Miranda warnings are warnings that refer only to an abstract right to counsel. You have a right to an attorney. Forgoing an abstract offer to call someone at some point in time. And that is very different from refusing to talk to an attorney who's actually available at that time and is attempting to provide at least initial assistance and advice. So I just wanted to clarify that that is what the court in McCauley is referring to when it made that comment. So for these reasons and those stated in the People's Brief, we ask that you affirm defendant's convictions and sentence. All right. Just to address a few points briefly. With respect to what the state relies heavily on what Detective Crane testified to. I'll point out that one of the things I already replied and pointed out was that Detective Crane's testimony was impeached. He claimed he said there was two attorneys here claiming to be your lawyers. But he acknowledged that he also reviewed the defendant's written statement and didn't make any corrections to it. And he admitted that. He was cross-examined about that on the stand. So in terms of reliance on Detective Crane, I think it's important to point out that the assistant state's attorney was the one who testified consistently with what was in the statement and both at the suppression hearing and at trial. He was consistent. And, you know, I would also point out that I think saying something in the abstract that a lawyer is here is not the same as providing information about the identity of those lawyers. And they had the identity. They knew who they were. But to go back to Justice House's point, I mean, I think that's exactly what happened in this case, that, you know, there was notwithstanding what Benny testified to, I mean, there was a real effort here to get a written statement. And I think it's not a good position to put the police in. And if an attorney shows up at the station, when are they allowed access? I mean, if they're there and they're representing to the police that their client is in custody and they want to see them, then at what point do they get to see them? At what point do they get to confer? Here they were allowed to see him, but a day after, and after he had already signed his written statement. And I think, you know, the point is, all of these cases, McCauley Woods, it's not enough to just Mirandize him. This isn't just about Miranda. It's about when an attorney comes to the station and can access his or her client. And there's just a portion. I'll just end on this. I wanted to quote something from Escobedo, because it's relied on heavily in McCauley and in Woods. We have also learned that the companion lesson of history, that no system of criminal justice can or should survive if it comes to depend for its continued effectiveness on the citizen's abdication through unawareness of their constitutional rights. No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of and exercise these rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system. And that's in 1964. And so, for these reasons, I would ask the Court to suppress Mr. Gallegos' confession and remand this matter for new trial. All right. Thank you. So the case was well-argued, well-briefed. We're going to take the matter under advisement. We will stand at a brief recess for a panel change for the next appeal.